UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

| | | |
|---|---|---|
| MICHAEL S. CRAMER, | ) | |
| | ) | |
| Plaintiff | ) | |
| | ) | |
| v. | ) | Case No.: 1:08-CV-176 |
| | ) | (Collier/Carter) |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant | ) | |

## REPORT AND RECOMMENDATION

This action was instituted pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) seeking judicial review of the final decision of the Commissioner denying the plaintiff a period of disability, disability insurance benefits, and supplemental security income under Title II and Title XVI of the Social Security Act, 42 U.S.C. §§ 416(I), 423, and 1382. This matter was referred to the undersigned pursuant to 28 U.S.C. § 636(b) and Rule 72(b) of the Federal Rules of Civil Procedure for a Report and Recommendation regarding the disposition of the plaintiff's Motion for Judgment on the Pleadings (Doc. 12) and defendant's Motion for Summary Judgment (Doc. 19).

For the reasons stated herein, it is **RECOMMENDED** that the Commissioner's decision be **REVERSED** and **REMANDED** pursuant to Sentence Four of 42 U.S.C. § 405(g).

### Application For Benefits

Plaintiff applied for DIB and SSI on October 4, 2005, alleging he became disabled on July 20, 2005, due to problems with his hearing, back, left shoulder, and knee (Tr. 28-31, 106). His claims were denied initially and on reconsideration (Tr. 28-31, 38-40, 44-46, 59-62).

Plaintiff filed a timely request for hearing by an ALJ (Tr. 37). On June 26, 2007, Plaintiff, who was represented by counsel, appeared and testified at a hearing before an ALJ (Tr. 199-210). A witness and vocational expert (VE) also testified. On October 9, 2007, the ALJ issued a decision denying Plaintiff's claims (Tr. 12-19). Plaintiff requested review of the ALJ's decision (Tr. 7). On April 18, 2008, the Appeals Council denied Plaintiff's request for review, making the ALJ's decision the Commissioner's final decision (Tr. 3-6). Plaintiff then filed a complaint seeking judicial review of the ALJ's decision.

## Standard of Review - Findings of the ALJ

Disability is defined as the inability to engage in any substantial gainful activity by reason of a medically determinable physical or mental impairment which has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. § 423(d)(1)(A). The burden of proof in a claim for Social Security benefits is upon the claimant to show disability. *Barnes v. Secretary, Health and Human Services*, 743 F.2d 448, 449 (6th Cir. 1984); *Allen v. Califano*, 613 F.2d 139, 145 (6th Cir. 1980); *Hephner v. Mathews*, 574 F.2d 359, 361 (6th Cir. 1978). Once, however, the plaintiff makes a prima facie case he cannot return to his former occupation, the burden shifts to the Commissioner to show there is work in the national economy which he can perform, considering his age, education and work experience. *Richardson v. Secretary, Health and Human Services*, 735 F.2d 962, 964 (6th Cir. 1984); *Noe v. Weinberger*, 512 F.2d 588, 595 (6th Cir. 1975).

The standard of judicial review by this Court is whether the findings of the Commissioner are supported by substantial evidence. *Richardson v. Perales*, 402 U.S. 389, 28 L. Ed. 2d 842, 92 S. Ct. 1420 (1971); *Landsaw v. Secretary, Health and Human Services*, 803 F.2d 211, 213

(6th Cir. 1986). Even if there is evidence on the other side, if there is evidence to support the Commissioner's findings, the Commissioner's findings must be affirmed. <u>Ross v. Richardson</u>, 440 F.2d 690, 691 (6th Cir. 1971). The Court may not reweigh the evidence and substitute its own judgment for that of the Commissioner even if it finds the evidence preponderates against the Commissioner's decision. <u>Bloodsworth v. Heckler</u>, 703 F.2d 1233, 1239 (11th Cir. 1983); <u>Crisp v. Secretary, Health and Human Services</u>, 790 F.2d 450 n. 4 (6th Cir. 1986). The Commissioner's findings are not subject to reversal merely because substantial evidence exists in the record to support a different conclusion. It presupposes there is a zone of choice within which the decision makers can go either way, without interference by the courts. <u>Felisky v. Bowen</u>, 35 F.3d 1037 (6th Cir. 1994), citing <u>Mullen v. Bowen</u>, 800 F.2d 535, 548 (6th Cir. 1986), quoting <u>Baker v. Heckler</u>, 730 F.2d 1147, 1150 (8th Cir. 1984).

As the basis of the October 9, 2007 administrative decision that plaintiff was not disabled, the ALJ made the following findings:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2010.

2. The claimant has not engaged in substantial gainful activity since July 20, 2005, the alleged onset date (20 CFR 404.1520(b), 404.1571 *et seq*., 416.920(b) and 416.971 *et seq*.).

3. The claimant has the following severe impairment: bilateral sensorineural hearing loss, more pronounced on the left (20 CFR 404.1520(c) and 416.920(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

3

5.  After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform light work except for work that requires sensitive hearing.

6.  The claimant is capable of performing past relevant work as a stock clerk. This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565 and 416.965).

7.  The claimant has not been under a disability, as defined in the Social Security Act, from July 20, 2005, through the date of this decision (20 CFR 404.1520(f) and 416.920(f)).

(Tr. 14-19). Such findings by the Commissioner are conclusive if they are supported by substantial evidence in the record. *Shaw v. Schweiker*, 730 F.2d 462 (6th Cir. 1984); *Wokojance v. Weinberger*, 513 F.2d 210 (6th Cir), *cert. denied*, 423 U.S. 586, 96 S. Ct. 107, 46 L. Ed. 2d 82 (1975). The sole function of this Court is to determine whether the Commissioner's decision is based upon such evidence. *Plank v. Secretary of Health and Human Services*, 734 F.2d 1174 (6th Cir. 1984); *Le Master v. Weinberger*, 533 F.2d 337 (6th Cir. 1976). The Supreme Court has defined substantial evidence as " . . . more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales, supra*, 402 U.S. at 401, (*quoting* *Consolidated Edison v. N.L.R.B.*, 305 U.S. 197, 229, 83 L. Ed. 2d 126, 140, 59 S. Ct. 206 (1938)).

## Issues Raised

Plaintiff raises the following issues:

I.  Because the Commissioner uses an unsigned consultative examiner's report in an unfavorable decision, the Commissioner commits reversible error in depriving Mr. Cramer of the procedural right given to him by the regulations.

II.  The Commissioner's decision is not supported by substantial evidence for the following reasons:

4

A. No hearing test that can be used in an unfavorable decision reflects Mr. Cramer's hearing loss for the period he is claiming disability;

B. The ALJ's observations about Mr. Cramer's ability to hear without "undue difficulty" misconstrues the evidence;

C. The vocational expert's testimony regarding Mr. Cramer's ability to return to work requires clarification.

## Statement of Relevant Facts

**1. Vocational Background**

Plaintiff was 39 years old at the time of the ALJ's decision (Tr. 202). He had a high school education and past relevant work as a stock clerk, a construction laborer, and a car washer (Tr. 95, 206-07). As a stock clerk, Plaintiff's duties included stocking, pulling items out to the floor, and unloading trucks (Tr. 96). He walked for 2 hours, stood for 8 hours, sat for 1 hour, climbed for 2 hours, stooped for 8 hours, kneeled for 2 hours, crouched for 8 hours; he handled, grabbed, or grasped big objects for 8 hours; and he reached for 8 hours (Tr. 96). The heaviest weight he lifted was 10 pounds, and he frequently lifted 10 pounds (Tr. 96). The VE testified that Plaintiff's job as a stock clerk was semi-skilled, light work (Tr. 207).

**2. Statements from Plaintiff and Third Parties**

Plaintiff testified that he currently lives with friends (Tr. 202). When asked by the ALJ how long his hearing had been as it was now, Plaintiff answered, "[e]ver since I was born" (Tr. 203). Plaintiff stated that he was born "deaf" (Tr. 203). He indicated he underwent surgeries for his hearing when he was 3 years old (Tr. 203).

Plaintiff stopped working in July 2005 (Tr. 203). He held various jobs in the past, but

5

Plaintiff and a witness at the hearing indicated that Plaintiff had a hard time keeping up with the demands of the jobs (Tr. 204). Plaintiff suggested that he had problems with his back (Tr. 204).

The witness indicated that Plaintiff knew sign language (Tr. 205). She stated that, prior to the surgery he underwent when he was 3 years old, he used sign language (Tr. 205). Plaintiff indicated that he could hear "just a little bit" and that he was trying to read the ALJ's lips (Tr. 205). He stated that he had to have eye to eye contact at all times (Tr. 205).

**3. Relevant Medical Evidence**

The evidence shows that Plaintiff had a history of Treacher Collins syndrome,[1] mid-face surgery, and evidence of middle ear ossicular chain problems (Tr. 181). He underwent surgery as a child in order to establish an ear canal on the left (Tr. 181). There is also evidence that Plaintiff had surgery on his jaw while in high school (Tr. 181). Plaintiff has been treated by John Boxell, M.D. an otolaryngologist, for his hearing loss (Tr. 181). According to treatment notes submitted, Dr. Boxell saw Plaintiff in April and June 2003 for intermittent ear pain and drainage problems (Tr. 181). Audiological testing in April 2003 indicated that Plaintiff was unable to hear sounds softer than 50 to 60 decibels at most frequencies between 250 and 8000 Hz,[2] indicative of

---

[1] "Treacher Collins syndrome . . . is a rare genetic disorder characterized by craniofacial deformities. Treacher Collins syndrome is found in 1 in 10,000 births. The typical physical features include downward slanting eyes, micrognathia (a small lower jaw), conductive hearing loss, underdeveloped zygoma, drooping part of the lateral lower eyelids, and malformed or absent ears." Wikipedia <http://en.wikipedia.org/wiki/Treacher_Collins_syndrome> (last visited February 12, 2009), (Doc 20, Defendant's Memorandum at p. 2).

[2] "Most speech sounds are in the 500- to 4000-Hz range. . . . Usual conversation ranges between 45 and 60 dB." The Journal of the American Medical Association <http://jama.ama-assn.org/cgi/content/full/295/4/460?maxtoshow=&HITS=10&hits=10&RESULTFORMAT=&fulltext=usual+conversation&searchid=1&FIRSTINDEX=0&resourcetype=HWCIT> (last visited February 2, 2009) (Doc 20, Defendant's Memorandum, p. 3)

6

moderate hearing loss[3] (Tr. 182).

On January 6, 2006, Dr. Thomas Mullady, M.D., an internal medicine specialist, performed a consultative examination (Tr. 132-33). Plaintiff told Dr. Mullady that he had experienced back pain for the past year and had been diagnosed with lumbar disk disease (Tr. 132). He also stated that he was unable to continue working at Wal-Mart (Tr. 132). His work involved unloading merchandise from trucks (Tr. 132). On physical examination, Plaintiff had, *inter alia,* a marked hearing impairment, and he wore a hearing aid in the left ear (Tr. 133). Dr. Mullady reported that he had to raise his voice to a moderate degree in order for Plaintiff to hear him (Tr. 133).

The Agency referred Plaintiff for a consultative evaluation at Northwest Georgia Hearing Center, which was performed on January 13, 2006 (Tr. 125). The evaluation has no signature but has the initials "RPF/lms" (Tr. 125). On the page containing the results of the audiological testing, under recommendations, it indicates to "F/u w/ Dr. Frady" (Tr. 126).[4] Thus, presumably, the "RPF" referred to Dr. Frady. According to the unsigned report, Plaintiff had a history of chronic ear disease as a child, and he had some developmental abnormalities as well (Tr. 125). Plaintiff indicated that he had worn hearing aids since childhood (Tr. 125). Currently, he wore a hearing aid in his left ear (Tr. 125). According to the evaluation, Plaintiff had bilateral micropsia with very small ear canals (Tr. 125). It was difficult to see the tympanic membranes, but there

---

[3] *See* League for the Hard of Hearing <http://www.lhh.org/about_hearing_loss/understanding/audiogram.html> (last visited February 2, 2009) (hearing at 40 to 55 decibels indicates moderate hearing loss). ( Doc 20, Defendant's Memorandum, p. 3).

[4] According to the Case Development Sheet, Plaintiff was scheduled to have a consultative examination with Robert P. Frady, M.D. (Tr. 188). The appointment was kept, and Dr. Frady's report was received by the Agency on January 19. (Tr. 188). Doc 20, Defendants Memorandum at p. 4) The report was not signed ( Tr. 125-127. A Physical Residual Functional Capacity Assessment with primary diagnosis of hearing impairment is also unsigned (Tr. 117-124)

7

was no evidence of active infection (Tr. 125). Physical findings also included severe septal deformity bilaterally and a high arched palate with a short soft palate and uvula (Tr. 125). Audiometric testing revealed a "severe rising to moderate" mixed hearing loss bilaterally (Tr. 125). Plaintiff had good discrimination in both ears, but aided testing could not be performed because Plaintiff's hearing aid was non-functional (Tr. 125).

**4.     Testimony of the VE**

The ALJ asked the VE the following question, "All right, you've heard [Plaintiff's] testimony here and his friend's testimony with respect to his hearing. In your experience as a vocational expert, to what extent would deafness or – preclude him from handling jobs?" (Tr. 207). The ALJ then added an exertional limitation of light work (Tr. 207). The VE testified, "For unskilled light work, there would certainly be a decrease in the number of jobs that hearing would be – or would be required for, but there still would be some additional unskilled jobs such as the jobs that he has performed that an individual like him would be able to continue to do." The VE testified that Plaintiff's job as a stock clerk was semi-skilled light work (Tr. 207). Without referring to the Dictionary of Occupational Titles ("DOT"), the VE indicated that Plaintiff could perform his job as a stock clerk, and hearing would not be a requirement (Tr. 208). The VE further testified that the following jobs were light and should not require hearing: hand packing job (3,000 jobs regionally and 300,000 jobs nationally); a laundry and dry cleaning worker (1,300 jobs regionally and 350,000 jobs nationally); and an assembler (3,000 jobs regionally and 600,000 jobs nationally) (Tr. 208). If the individual could not keep up with pace and demands of normal work routines, such limitation would affect the ability to sustain employment (Tr. 209).

8

## Analysis

For reasons that follow, I conclude the Commissioner's decision is not supported by substantial evidence and remand under sentence four is the appropriate remedy. In summary, the Commissioner violated it's own regulations in relying on an unsigned report; the ALJ failed to ask a properly formed hypothetical question when seeking the opinion of the Vocational Expert ("VE"); and there was no explanation given as to why the VE's opinion, that the job of stock clerk did not require hearing, varied from the description of the job as set out in the Dictionary of Occupational Titles ("DOT"). Although the ALJ found the VE's testimony was consistent with the manner in which the jobs were classified in the DOT (Tr. 18), he failed to ask the VE, as required by SSR 00-4P, whether there was a conflict.

**The Unsigned Consultative Examiner's Report**

Plaintiff Michael S. Cramer is claiming disability in large part due to significant hearing loss. The record includes an unsigned consultative examiner's report (Tr. 125 - 127). The Agency had referred Plaintiff for a consultative evaluation at Northwest Georgia Hearing Center, which was performed on January 13, 2006 (Tr. 125). The findings of the report are set out above.

Other evidence in the record bearing on Plaintiff's hearing loss was some two years before Plaintiff stopped working. In April of 2003, his otolaryngologist, John F. Boxwell, M.D., performed a hearing test showing that Mr. Cramer had moderate hearing loss with an inability to hear sounds softer than fifty to sixty decibels, depending upon the frequency. (Tr. 182).

Plaintiff notes that the later unsigned report in January of 2006 showed Plaintiff's hearing loss at the higher frequencies remained "moderate;" his hearing at 250 Hz had worsened to the

9

point that he could hear nothing softer than ninety decibels with his left ear or eighty decibels with his right. (Tr.126). Plaintiff argues that at 500 Hz, which is within the lower ranges for human speech, he could hear nothing softer than seventy decibels with his right ear and sixty five decibels with his left. *Id.* At 1000 Hz, he would still have difficulty hearing anything softer than sixty decibels. Because normal conversation is usually held between forty-five and sixty decibels, continues the argument, Plaintiff is not able to hear most conversations unless the speaker has a high-pitched voice and is speaking louder than average.

Regardless of whether substantial evidence exists to support the Commissioner's decision, violation of the regulations merits a remand, absent a showing of harmless error. An elemental principle of administrative law is that agencies are bound to follow their own regulations. *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 545 (6th Cir. 2004) (remanding claim for disability where Commissioner failed to comply with regulations requiring provision of good reasons for discounting a treating source's opinion). Whether a procedural error is "harmless" in this context does not depend on the likely outcome of the case but instead on whether the Commissioner violated a regulation establishing a procedural right designed to protect the claimant. *Wilson*, 378 F.3d at 546-47 (defining "substantial right"). To help ensure that the appropriate medical consultant personally conducts the examination and reviews the report requested by the Commissioner, the regulations dictate that a consultative examiner must sign his or her report:

> All consultative examination reports will be personally reviewed and signed by the medical source who actually performed the examination. This attests to the fact that the medical source doing the examination or testing is solely responsible for the report contents and for the conclusions, explanations or comments provided with respect to the history, examination and evaluation of laboratory test results. The signature of the medical source on a report annotated "not proofed" or "dictated but not read" is not acceptable. A rubber stamp signature of a medical source or the

10

medical source's signature entered by any other person is not acceptable.

20 C.F.R. §§ 404.1519n(e), 414.919n(e). Although the Commissioner may rely on an unsigned report in a favorable decision, the regulations forbid the use of an unsigned report in an unfavorable decision. §§ 404.1519o, 414.919o; *see Scott v. Shalala*, 898 F. Supp. 1238, 1251 (N.D. Ill. 1995) (remanding claim because Commissioner relied in part on a consultative examiner's unsigned interrogatory). The regulations do not permit the adjudicator simply to ignore or omit an unsigned report: the adjudicator must either acquire a signature from the actual examiner or else order another consultative examination for the claimant. §§ 404.1519o(b), 414.919o(b); HALLEX I-2-5-20 (Sept. 28, 2005).

Failure to follow the regulations requiring a consultative examiner's signature constitutes error requiring remand. These regulations are expressly designed to protect the claimant by having the medical consultant certify the results that are to become a part of the claimant's record. 20 C.F.R. §§ 404.1519n(e), 414.919n(e). By allowing the use of unsigned reports in favorable decisions but not in anything less, Sections 404.1519o and 414.919o imply that the signature requirement exists primarily to safeguard the claimant's rights. Thus, any use of an unsigned consultative examination report in an unfavorable decision is an error requiring a remand under the rule articulated in *Wilson v. Commissioner of Social Security*, 378 F.3d 541 (6th Cir. 2004).

The Court will recommend remand of the case to the Commissioner with instructions to obtain a new audiological exam or a proper signature on the report pursuant to Sections 404.1519o(b) and 414.919o(b).

11

Case 1:08-cv-00176-CLC-WBC   Document 22   Filed 07/29/09   Page 11 of 18   PageID #: 77

The Commissioner argues it is clear this report was from Dr. Frady and to the extent the report may have been signed by another person, and thus considered signed improperly, such would amount to harmless error. The Commissioner also notes Dr. Frady's report was only one piece of evidence considered by the ALJ, and even at that, the ALJ gave it only "some" weight (Tr. 18). The Commissioner also notes the job as a stock clerk did not require hearing (Tr. 207-08). As such, continues the argument, Dr. Frady's report would have no impact on the ultimate outcome of this case and to send the case back for another consultative examination or for Dr. Frady to properly sign the evaluation would not achieve any greater limitation than the hearing limitation that was ultimately relied on by the ALJ.

The problem with this argument is that the only reason given by the ALJ in only giving this report "some" weight was the fact that it was unsigned. Specifically the ALJ stated:

> I have considered the opinion, by way of a diagnosis, offered by the consultative audiometrist, that the claimant has a "rising severe to moderate mixed hearing loss bilaterally." Though no credentials are offered, the examiner is likely qualified to administer hearing testing, and the results of testing are consistent with the overall record regarding the claimant's hearing loss. I note the examiner advised the claimant in the use of hearing aids and that the claimant's left ear aid was non-operational at the time of the examination; yet, I give the examiner's opinion some weight.

(Tr. 18).

This consultative hearing test indicated a greater degree of hearing loss than the earlier report. The ALJ noted plaintiff had been able to perform his past job previously with his condition. This indicates the ALJ is concluding there has been no significant deterioration of his ability to hear. There is no way for me to know what weight the ALJ might have given this report if it had been properly signed. In any event, the weighing of this evidence is the province

12

of the ALJ, not mine.

The ALJ's failure to obtain a valid, signed report was also more than harmless error because a current report worthy of substantial weight could have affected the outcome of the decision. The ALJ gave "considerable weight" to the less-restrictive 2003 opinion of Dr. Boxell, which supports the ALJ's finding that Mr. Cramer's hearing impairment prevents him from performing only those jobs that require "sensitive hearing." (Tr. 18). Lack of a signature is the only explanation the ALJ opinion provides for why the CE report does not deserve "considerable weight" instead of "some weight." *Id.* Had the ALJ given the CE's report full consideration, the ALJ may have found that Mr. Cramer's hearing impairment additionally hinders him in engaging in effective oral communication. *See*, Plaintiff.'s Brief at 3-4 (explaining results of hearing test).

Without a signed hearing report, this evidence, the record lacks a valid hearing test for the period that Plaintiff is alleging disability.

**The Hypothetical Question**

Plaintiff next argues Social Security policy does not permit an administrative law judge to allow a vocational expert to draw conclusions about a claimant's functional capacity at the hearing. HALLEX I-2-6-74(C) (Sept. 2, 2005). Plaintiff notes the ALJ asked the VE to render testimony based on her own understanding of Mr. Cramer's testimony (Plaintiff's Memorandum at 9,10).

Hypothethical questions to the VE must precisely and comprehensively set out every physical and mental impairment of the applicant that the ALJ accepts as true and significant *Varley,* 820 F. 2d at 779 ("Substantial evidence may be produced through reliance on the testimony of a vocational expert in response to a "hypothetical" quesiton, but only "if the

13

question acccurately protrays [plaintiff's] individual physical and mental impairments."

In this case the ALJ asked the VE the following question:

Q. of ALJ: All right, you've heard his testimony here and his friend's testimony with respect to his hearing. In your experience as a vocational expert, to what extent would the deafness or - - preclude him from handling jobs?

There is simply no hypothetical question asked. The ALJ did not tell the VE what level of hearing impairment he found from all of the evidence he found credible, including the audiological findings in the record. Rather, he invited the VE to draw his own conclusion based solely on the testimony of Plaintiff and his friend who accompanied him to the hearing.

A response to a flawed hypothetical question is not substantial evidence and cannot support a finding that work exists which [a plaintiff] can perform." *Parent v. Comm'r of Soc. Sec.*, No. CIV. A. 07-cv-12111, 2008 WL 1795019, * 5 (E.D. Mich. Apr. 18, 2008). The hypothetical question must state with precision the physical and mental impairments of the claimant." *Id.* at n.1 (citing *Myers v. Weinberger*, 514 F.2d 293, 294 (6th Cir. 1975); *Noe v. Weinberger*, 512 F.2d 588, 596 (6th Cir. 1975)). Even though this case resulted in a finding at step four, it is based on the opinion of the VE that plaintiff could perform his prior work. Without a properly formed hypothetical question, his opinion cannot support that conclusion. *See Baugus v. Secretary of Health and Human Services,* 717 F. 2d 443 (8th Circuit, 1983).

**The Conflict Between the VE's Opinion and the DOT**

Although the ALJ found the VE's testimony consistent with the manner in which the jobs were classified in the DOT (Tr. 18), he failed to ask the VE, as required by SSR 00-4P, whether

14

there was a conflict. Pursuant to a Social Security Ruling,[5] administrative law judges are required to ensure the vocational expert's testimony is consistent with the DOT. Soc. Sec. Rul. 00-4p, 2000 SSR LEXIS 8, at *2 (SSA Dec. 4, 2000). The ruling specifically requires the administrative law judge to resolve any apparent conflicts:

> When there is an apparent unresolved conflict between VE [vocational expert] or VS [vocational specialist] evidence and the DOT, the adjudicator must elicit a reasonable explanation for the conflict before relying on the VE or VS evidence to support a determination or decision about whether the claimant is disabled. At the hearings level, as part of the adjudicator's duty to fully develop the record, the adjudicator will inquire, on the record, as to whether or not there is such consistency.
> Neither the DOT nor the VE or VS evidence automatically "trumps" when there is a conflict. The adjudicator must resolve the conflict by determining if the explanation given by the VE or VS is reasonable and provides a basis for relying on the VE or VS testimony rather than on the DOT information.

*Id.* While an administrative law judge does not have a duty to verify the vocational expert's testimony regarding conflicts, *Martin v. Comm'r of Soc. Sec.*, 170 Fed. Appx. 369, 374 (6th Cir. 2006) (unpublished case), Social Security Ruling 00-4p does impose a duty to inquire into such conflicts. Failure to have the vocational expert testify regarding conflicts with the DOT undermines the Commisioner's rationale for finding that a claimant can return to his or her prior work.[6]

---

[5] "[Social Security Rulings] are binding on all components of the Social Security Administration. These rulings represent precedent final opinions and orders and statements of policy and interpretations that we have adopted." 20 C.F.R. § 402.35(b)(1).

[6] Although Soc. Sec. Rul. 00-4p pertains to expert testimony about a claimant's ability to return to prior work at Step 4 of the determination process, courts have only addressed the implications of this error at Step 5, where the burden shifts to the Commissioner to prove the existence of jobs in the relevant economy that the claimant can perform. *Brazle v. Astrue*, 2008 U.S. Dist. LEXIS 25734, 60-61 (M.D. Tenn. Mar. 27, 2008) (unpublished case) (remanding for lack of substantial evidence at step 5 due to failure to follow Soc. Sec. Rul. 00-4p where there

15

In this case, the following colloquy took place:

Q (by ALJ): All Right, you've heard his testimony here and his friend's testimony with respect to his hearing. In your experience as a vocational expert, to what extent would the deafness or - - preclude him from handling jobs?
A: Without any physical limitations considered?
Q: Yes, No, well, let's say light work.
A: On light work?
Q: Um-hum.
A: For unskilled light work, there would certainly be a decrease in the number of jobs that hearing would be - - or would be required for, but there still would be some additional unskilled jobs such as the jobs that he has performed that an individual like him would be able to continue to do . . .
. . . . . . .

ALJ: The question was light. I mean why can't [sic] do those work?
Atty: I though [sic] you said light with his testimony.
VE: No, I just said such as like jobs such as the stock clerk or those kinds of jobs a person still would be able to do, packing or pulling items from - - now, what he actually did, you're right, those were not necessarily light jobs, but I'm saying such as those jobs, hearing would not be a requirement. Any jobs requiring public contact certainly would be eliminated.

(Tr. 207, 208).

Plaintiff contends the statement of the ALJ that hearing would not be a requirement is inconsistent with the DOT. He asserts the numeral "6" in the fifth position of DOT code for "stock clerk" (299.367-014) suggests that conversing with others is indeed a requirement of the job. The ALJ did not comply with Social Security Ruling 00-4p and ascertain whether the VE's testimony was consistent with the DOT. Hence, without clarification of why the VE's testimony seems to conflict with the DOT, the Commissioner's ruling that Mr. Cramer is able to return to his prior work is not supported by substantial evidence. As Plaintiff argues, this statement

---

was an apparent conflict between the DOT and the expert's testimony); *Young v. Comm'r of Soc. Sec.*, 351 F. Supp. 2d 644, 652 (E.D. Mich. 2004) (same); *Teverbaugh v. Comm'r of Soc. Sec.*, 258 F. Supp. 2d 702, 705-06 (E.D. Mich. 2003) (same). (Doc. 13, Plaintiff's Memorandum, p. 10).

16

contradicts Social Security policy, as well as the *Dictionary of Occupational Titles*. The existence of a significant number of jobs for which hearing is not a requirement negates the point of Listing 12.03 and Social Security Ruling 96-9, which presume that an ability to hear is necessary for employment. 20 C.F.R. Subpt. P, Appx. 1, § 12.03; Soc. Sec. Rul. 96-9p, 1996 SSR LEXIS 6, at *9 (SSA July 2, 1996). The Commissioner should not use expert testimony if that testimony undermines the Commissioner's own policy and regulations. *See Lounsburry v. Barnhart*, 468 F.3d 1111, 1116 (9th Cir. 2006) (remanding decision that relied on vocational expert testimony contrary to the Medical Vocational Guidelines). The existence of Listing 12.03 brings into serious question the opinion of the VE that the identified job does not require hearing. At least some explanation of this discrepancy should have been given. Because the ALJ failed to inquire as to whether there was an inconsistency and explain why hearing would not be a requirement, and, in light of the DOT and Listing 12.03, I conclude that there is not substantial evidence to support the finding of the ALJ that the VE's testimony was consistent with the manner in which these jobs were classified in the DOT (Tr. 18), thus requiring remand.

## **Conclusion**

For the foregoing reasons, I conclude the Commissioner has not met the burden of showing Plaintiff is capable of performing his last relevant work as a stock clerk and that the Commissioner's decision is not supported by substantial evidence. Accordingly, I RECOMMEND that:

1. Plaintiff's motion for judgment on the pleadings (Doc. 12) seeking remand under Sentence Four of 42 U.S.C. § 405(g) be GRANTED.

2. Defendant's motion for summary judgment (Doc. 19) be DENIED.

3. The Commissioner's decision denying benefits be REVERSED and REMANDED pursuant to Sentence Four of 42 U.S.C. § 405(g) for action consistent with this Report and Recommendation.

Dated: July 29, 2009
           s/William B. Mitchell Carter
           UNITED STATES MAGISTRATE JUDGE

___

Any objections to this Report and Recommendation must be served and filed within ten (10) days after service of a copy of this recommended disposition on the objecting party. Such objections must conform to the requirements of Rule 72(b) of the Federal Rules of Civil Procedure. Failure to file objections within the time specified waives the right to appeal the District Court's order. *Thomas v. Arn*, 474 U.S. 140, 88 L.Ed.2d 435, 106 S.Ct. 466 (1985). The district court need not provide de novo review where objections to this report and recommendation are frivolous, conclusive or general. *Mira v. Marshall*, 806 F.2d 636 (6th Cir. 1986). Only specific objections are reserved for appellate review. *Smith v. Detroit Federation of Teachers*, 829 F.2d 1370 (6th Cir. 1987).